UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KONINKLIJKE PHILIPS ELECTRONICS N.V.,

Plaintiff,

v.

CARDIAC SCIENCE OPERATING COMPANY,

Defendant.

Case No. C08-543 MJP

**ORDER ON CLAIM CONSTRUCTION**

This matter comes before the Court on remand from the Federal Circuit, which ordered the Court to conduct a Markman hearing and construe the term "impedance-compensated defibrillation pulse." Having conducted the Markman hearing on July 9, 2010, where Defendant offered expert testimony, reviewed the parties' briefing and all papers submitted in support, the Court construes the term as set forth below.

**Background**

The matter before the Court is a patent dispute involving external cardiac defibrillation devices. Plaintiff Koninklijke Philips Electronics N.V. is the assignee of U.S. Patent No. 6,241,751 (the "'751" patent), which discloses a cardiac defibrillator that delivers electrical shocks to a patient's heart during ventricular fibrillation. The patent issued on June 5, 2001 after

it was submitted on April 22, 1999. The ‘751 patent discloses an invention that delivers an electrical shock based on two parameters: “First the defibrillator uses multiple capacitor configurations to measure a patient’s transthoracic impedance . . . [and] [s]econd the defibrillator uses the capacitors to deliver varying energy levels measured in joules that on operator can select for delivering electric shock.” (Dkt. No. 50 at 4.)

On March 6, 1998, Defendant Cardiac Science Operating Company filed a patent application for a multiple capacitor cardiac defibrillator. On May 31, 2002, Defendant filed a continuation application, serial no. 10/159,806 (the “Owen application”), in which Defendant copied claims 1-37 of the ‘751 patent to provoke interference proceedings.

Predating both the ‘751 patent and the Owen application is U.S. Patent No. 5,749,904 (the “Gliner patent”), which discloses a multiple-capacitor defibrillator that uses different capacitor configurations for delivering defibrillation pulses. (See Morgan Decl. ¶ 38; Ex. 1, Gliner patent, col. 12, ln.22 – col. 13, ln.56; Figs. 14 & 16.) The defibrillator measures patient impedance and uses the measured impedance to select the appropriate capacitor configuration for pulse delivery. (Morgan Decl. ¶¶ 38-49.) The Gliner patent was submitted by Carlton Morgan and others working at a company called Heartstream, Inc. Plaintiff is the assignee of the patent.

The Board of Patent Appeals and Interference (“Board”) declared an interference between the Owen application and the ‘751 patent with regard to claim 15. This Court affirmed the Board and the Federal Circuit reversed and remanded. (Dkt. No. 50.) The Federal Circuit remanded with instructions for the court to construe the term “‘impedance-compensated defibrillation pulse’ in light of the ‘751 patent written description and then determine whether the Owen application’s written description satisfies § 112, ¶ 1.” (Dkt. No. 50 at 18.)

The parties requested claim construction of just one term: “impedance-compensated defibrillation pulse.” They requested the Court construe the term in light of the ‘751 patent and in light of the Owen application. At oral argument, Plaintiff provided the Court a tutorial and Defendant put on testimony of Mark Kroll.

**Analysis**

A. Construction of "Impedance-Compensated Defibrillation Pulse" in light of the '751 patent

Plaintiff argues that the Court is to apply the lexicographer rule and construe the disputed term, "impedance-compensated defibrillation pulse," to include both patient impedance and the desired energy level. Defendant argues that the term is unambiguous and should be defined to include the limitation of patient impedance only. The Court agrees with Plaintiff.

The Federal Circuit remanded with "instructions to construe the claims in accordance with Agilent Techs, Inc. v. Affymetrix, Inc., 567 F.3d 1366 (Fed. Cir. 2009)." (Dkt. No. 50 at 21.) Agilent resolves the question of "which specification to consult when construing a claim whose written description is challenged in an interference." Agilent, 567 F.3d at 1374; see In re Spina, 975 F.2d 854, 856 (Fed. Cir. 1992) ("When an interpretation is required of a claim that is copied for interference purposes, the copied claim is viewed in the context of the patent from which it was copied."). As requested by the Federal Circuit, the Court first construes the disputed term in light of the '751 patent's written description, not the Owen application.

In construing a patent's terms, the court "generally assigns claim terms their ordinary and customary meanings, according to the customary understanding of a person of ordinary skill in the art who reads them in the context of the intrinsic record." Agilent, 567 F.3d at 1376. "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." Id. (quoting Philips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc)). The court considers the disputed term in light of the specification, which is the "single best guide to the meaning of a disputed term." Id. at 1377 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Philips, 415 F.3d at 1313.

In some patents, "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." Philips, 415 F.3d at 1316. "In such cases, the inventor's lexicography governs." Id. "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor," even if there is a definition in the specification. Id. When the specification states that a particular term "means" x, y, or z, the Court generally finds that there has been an express definition and applies that definition. See Abbott Labs. v. Andrx Pharms., Inc., 473 F.3d 1196, 1210 (Fed. Cir. 2007) (noting, however, that a phrase "the pharmaceutically acceptable polymer is a water-soluble hydrophilic polymer" was not definitional). Other claims within the patent can "also be valuable sources of enlightenment as to the meaning of a claim term." Philips, 415 F.3d at 1314. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Id. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." Id. at 1314-15.

Plaintiff correctly argues that the lexicographer rule should inform the Court's construction. (Dkt. No. 68 at 17-18.) The first two sentences of the summary of the invention in the '751 patent provide an express definition of the disputed term:

> A defibrillator having an energy storage capacitor network with a set of configurations selected according to patient impedance and desired energy level for delivery of an impedance-compensated defibrillation pulse is provided. Impedance-compensation according to the present invention means providing an energy storage capacitor network with an overall capacitance and charge voltage that are tailored to the patient impedance and the desired energy level.

(Dkt. No. 67-2 at 13.) The first sentence explains quite clearly that the "impedance-compensated defibrillation pulse" is an energy pulse whose level is determined by the patient impedance and the desired energy level. By using the words "present invention," Plaintiff constrains the scope of the disputed term and shows its intent to give the term a unique definition. See Verizon Servs.

Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1308 (Fed. Cir. 2007). The second sentence expressly defines the disputed term by using of the word "means" to explain "impedance-compensation." See Abbott Laboratories, 473 F.3d at 1210. The sentence explains that "impedance-compensation" includes both patient impedance and the desired energy level. The Court finds no substantive difference between "impedance-compensation" and "impedance-compensated" for purposes of construing the terms. The two phrases are interchangeable. The fact that the words "defibrillation" and "pulse" are not mentioned does not limit the importance of the second sentence's express definition of the dispute term. As Defendant admits, there is no dispute over what these latter two words mean. (See Dkt. No. 71 at 11.) The patentee acted as its own lexicographer and the Court construes the disputed term in light of the '751 patent to mean: "a defibrillation pulse produced from an energy storage capacitor network with an overall capacitance and charge voltage that are tailored to patient impedance and the desired energy level."

The rest of the specification reaffirms the lexicographer's definition of the disputed term. The Abstract of the '751 patent, the Summary of the Invention, and the description of the defibrillator's controller all refer to the disputed term as containing the patient impedance and desired energy level. ('751 patent Abstract; id. at col. 3, lns. 39-45; id. at col. 5, lns. 32-37, & Fig. 1.) Figure 7 of the patent also shows how the capacitance network is selected for both patient impedance and the desired energy level. (Id. at Fig. 7 & col. 9, lns. 22-33.) Defendant points to only one potentially inconsistent use of the disputed term in the '751 patent. (Dkt. No. 78 at 10-12.) The independent claim of Claim 15 does not refer to the disputed term as including the desired energy level. Such a restriction only appears in Claim 16 and Claim 19. However, this claim differentiation does not convince the Court to otherwise ignore the '751 patent's express definition and consistent use of the disputed term. Claim differentiation is but one tool of many to aid the Court in construing disputed claim language. See Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1381 (Fed. Cir. 2006) (noting that "[c]laim

differentiation is a guide, not a rigid rule") (quotation omitted). The Court finds the '751 patent to consistently use and define the disputed term as it was expressly defined in the Summary of the Invention.

Defendant argues that the lexicographer rule should not apply because the Court must first find ambiguity before it considers the '751 specification. (Dkt. No. 71 at 6-7 (citing DeGeorge v. Bernier, 768 F.2d 1318, 1321-22 (Fed. Cir. 1985)).) Defendant essentially asks the Court to ignore the Federal Circuit's directive to "construe the [disputed] term . . . in light of the '751 patent written description." (Dkt. No. 50 at 18.) The Court rejects this invitation. The Federal Circuit also counseled the Court to apply the Agilent decision, which reaffirmed the rule that "the specification 'is the single best guide to the meaning of a disputed term.'" Agilent, 567 F.3d at 1376-77 (quoting Vitronics, 90 F.3d at 1582).

Defendant also seeks a different construction of the disputed term by relying on the '751 patent's prosecution history and extrinsic expert testimony. It is plain from the '751 patent written description that the disputed term includes the two parameters of patient impedance and desired energy level. The Court is unconvinced that these two sources of purportedly conflicted evidence should change the outcome. See Philips, 415 F.3d at 1317-18 (noting that expert testimony and prosecution history are often of little value in construing disputed terms).

B. Construction of the disputed term in light of the Owen application

The parties also request the Court construe the disputed term in light of the Owen application. For Plaintiff's written description challenge to the patentability of the Owen application's claims based on prior art, the claims must be construed in light of the Owen application's specification. The parties agree that the Owen application uses the disputed term to mean a defibrillation pulse based only on patient impedance, not also the desired energy level. (Compare Dkt. No. 71 at 13-18 with Dkt. No.68 at 23-24.) Aside from the copied claims, the Owen application does not refer to using the desired energy level to set the "impedance-compensated defibrillation pulse." Indeed, Defendant argues strongly that this parameter

(desired energy level) is never implicated when referring to the disputed term. (Dkt. No. 71 at 13-18.) For Plaintiff's prior art challenge, the Court construes the term "impedance-compensated defibrillation pulse" as used in the Owen application in light of the application broadly to mean "a defibrillation pulse that is adjusted based on patient impedance."

**Conclusion**

The Court construes the term "impedance-compensated defibrillation pulse" in light of the '751 patent to mean: "a defibrillation pulse produced from an energy storage capacitor network with an overall capacitance and charge voltage that are tailored to patient impedance and the desired energy level." For Plaintiff's written description challenge to the patentability of the Owen application's claims based on prior art, the Court construes the term "impedance-compensated defibrillation pulse" in light of the Owen application to mean "a defibrillation pulse that is adjusted based on patient impedance."

The Clerk shall transmit a copy of this Order to all counsel of record.

Dated this 15th day of July, 2010.

Marsha J. Pechman
United States District Judge